**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
CINCINNATI DIVISION**

| | | |
|---|---|---|
| **QUALUS CORP. and QUALUS SERVICES, LLC** | ) ) ) | |
| **Plaintiffs,** | ) ) | **Case No.** __1:23-CV-352__ |
| **v.** | ) ) | **JURY DEMANDED** |
| **BRIAN WILSON** | ) ) | |
| **Defendant.** | ) ) | |

---

## VERIFIED COMPLAINT

---

Plaintiffs Qualus Corp. and Qualus Services, LLC ("Plaintiffs" or collectively, unless separately designated, "Qualus") bring their Complaint and request for preliminary injunction against Defendant Brian Wilson ("Defendant" or "Wilson") and state as follows:

### Emergency Nature of this Action

1.      This action arises out of:  (a) Wilson's theft of highly confidential and trade secret business strategy documents from Qualus, which he sent to his personal email address on a Friday before announcing his resignation the following Monday; and (b) Wilson's subsequent employment with RESA Power ("RESA"), a direct competitor of Qualus, and his recruitment of other Qualus employees to join him at RESA in violation of his non-competition and non-solicitation covenants to Qualus.

2.      On the eve of his departure, Wilson stole detailed plans for sales and marketing strategies at Qualus, assessments of strategic partnerships, rank-ordering of customer targets by priority for Qualus, plans for strategic expansion of opportunities, and a list of over 15,000 current and potential customers, including the Qualus sales person assigned to each one.

1

3.     Wilson then attempted to hide his wrongdoing by misleading Qualus regarding his intentions to work with a competitor and false promises that he had returned all Qualus information and would turn over anything he later found.

4.     Qualus brings this action seeking a preliminary injunction and other relief as a result of Wilson's misappropriation of trade secrets and his violation of confidentiality, non-competition, and non-solicitation covenants contained in a Class B Unit Award Agreement ("Agreement") that he entered in exchange for the opportunity to participate in a Management Incentive Plan offered to certain employees at Qualus.  A copy of the Agreement is attached as Exhibit 1 hereto.

5.     In September 2022, Qualus sent Wilson a letter reminding him of his contractual obligations and the consequences of his actions if he violated those obligations.  Wilson denied he had violated the Agreement, and stated affirmatively that "[a]ny property and information of Qualus that was in his possession or under his control has already been returned to Qualus and, in the event he discovers any other property unintentionally in his possession, such property would be promptly returned to Qualus."  Qualus has learned that Wilson's representations were false.

6.     On information and belief, since leaving Qualus and joining RESA, Wilson has successfully solicited at least one former employee that was his direct report at Qualus to leave their employment with Qualus and to join RESA.   On information and belief, the employee did, in fact, voluntarily resign his employment with Qualus and has entered employment with RESA.

7.     Qualus has recently learned that on July 15, 2022, three days before tendering his resignation, Wilson sent a number of highly confidential and trade secret documents to a personal email address, including Qualus customer lists, targets, and business strategies.  On information and belief, the confidential and trade secret documents Wilson sent to his personal email address

were created by Wilson and others at Qualus's expense and could be used by RESA to unfairly compete with Qualus and cause irreparable harm to Qualus's business interests.

8.  To avoid further irreparable harm to Qualus's business, proprietary, and competitive interests, Qualus seeks a preliminary injunction enforcing the terms of the Agreement prohibiting Wilson from possessing, accessing, disclosing, or using in any manner any and all trade secrets and confidential information that he misappropriated from Qualus on behalf of RESA or any other entity.  Qualus further seeks an order requiring Wilson to provide any and all laptops, phones, or other electronic devices and storage drives that were used to access and/or store the documents and other information he took from Qualus so that it can perform a forensic examination of same.

9.  Qualus also seeks damages for Wilson's breaches of the Agreement and misappropriation of trade secrets, and its reasonable attorneys' fees and costs incurred in enforcing the Agreement and protecting its rights through this action.

## Parties

10.  Qualus Corp is a Delaware corporation headquartered in Florida.

11.  Qualus Services, LLC is a Delaware limited liability company headquartered in Florida, and has locations across the United States including in Cincinnati, Ohio.

12.  Upon information and belief, Wilson is a citizen and resident of Ohio with a last known home address in Cincinnati, Ohio.

## Jurisdiction and Venue

13.  Subject-matter jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1367 because Qualus asserts claims arising under federal law and other supplemental claims that form part of the same case or controversy.

14.     Wilson is subject to the personal jurisdiction of this Court and venue is proper in this Court pursuant to 28 U.S.C. §1391(b), because he was, and on information and belief remains, a resident of Cincinnati, Ohio, was employed by Qualus Services, LLC and performed services for Qualus in this district, and engaged in tortious actions in this district.

### Facts

**A.     Background**

15.     Qualus is a leader in power engineering, power management, and technical field services in support of the modernization of the electric power infrastructure. Qualus has locations across the United States. Qualus was formed in 2018 following a merger of CE Power Engineered Services, LLC (now known as Qualus Services, LLC) and Power Grid Engineering, LLC (now known as Qualus, LLC) both of which continue to provide services under their brand names as wholly owned subsidiaries of Qualus.

16.     Wilson was initially hired on January 25, 2016 by CE Power Solutions, LLC (now known as Qualus Solutions, LLC).

17.     Prior to being hired by Qualus Solutions, Wilson had no experience in the industry. Qualus Solutions, and later Qualus Services, provided Wilson with training, expertise, and relationships as its employee and Vice President, Business Development, and representative throughout the power industry.

18.     On May 3, 2021, Wilson resigned from his role as President of Qualus Solutions, LLC for personal reasons. He was hired by Qualus Services, LLC on June 21, 2021 as its Vice President, Business Development. In that position, and as a member of the Executive Team at Qualus, Wilson worked to develop a business strategy surrounding client acquisitions, sales targets, and other highly confidential business strategies.

4

19.     Wilson was one of the highest paid members of the executive team and reported

directly to the Chairman and CEO of Qualus, occupying a special position of confidence and trust

at Qualus, as well as influence over the employees of Qualus Services.

**B.     The Agreement and Management Incentive Plan**

20.     As additional compensation in connection with his position as Vice President,

Business development, Wilson was offered and accepted the opportunity to participate in a

Management Incentive Plan that made him eligible to receive ownership shares in Relay

Investment, L.P..  Qualus is a member of the Partnership Group of Relay Investment, L.P..  Wilson

signed the Agreement on or about June 25, 2021.

21.     As a condition of his participation in the Management Incentive Plan and in

recognition of the duties and access inherent in his new position, Wilson agreed to certain

restrictive covenants and acknowledged:

> the importance to the Partnership Group of protecting their
> Confidential Information and other legitimate business interests,
> including the valuable trade secrets and goodwill that they have
> developed or acquired.   In consideration of the Participant's
> continued employment with the Partnership Group, the Participant's
> equity award and other good and valuable consideration, the receipt
> and sufficiency of which the Participant hereby acknowledges, the
> Participant agrees that the following restrictions on the Participant's
> activities during and after his or her employment are reasonable and
> necessary to protect the legitimate interests of the Partnership
> Group.

(Exhibit 1 Ex. A § 1.)

22.     Section 2 of Exhibit A to the Agreement provided that:

> 2.     <u>Confidentiality</u>.
>
> (a) The Participant agrees that all Confidential Information
> which the Participant creates or has created or to which the
> Participant has access as a result of the Participant's employment
> and other associations with the Partnership Group is and will remain

5

the sole and exclusive property of the Partnership Group. The Participant agrees that, except as required for the proper performance of the Participant's regular duties for the Partnership Group, as expressly authorized in writing in advance by a duly authorized officer of the Partnership, or as required by applicable law, the Participant will never, directly or indirectly, use or disclose any Confidential Information. The Participant understands and agrees that this restriction will continue to apply after the cessation of the Participant's employment for any reason. . . ..

(b) The Participant agrees that all documents, records and files, in any media of whatever kind and description, relating to the business, present or otherwise, of the Partnership Group, and any copies, in whole or in part, thereof (the "Documents"), whether or not prepared by the Participant, will be the sole and exclusive property of the Partnership Group. The Participant agrees to safeguard all Documents and to surrender to the Partnership or the relevant member of the Partnership Group (or destroy, at the Partnership 's direction), at the time the Participant's employment terminates or at such earlier time or times as an authorized officer of the Partnership may specify, all Documents then in the Participant's possession or control. . . ..

(Exhibit 1 Ex. A § 2.)

23.    The Agreement also contained a non-competition provision that prohibited Wilson from competing in the Restricted Area for twelve (12) months following the earlier of (i) the date Wilson ceased to be a partner or (ii) the date of the end of Wilson's employment.  Paragraph 4(a) of Exhibit A to the Agreement states, in relevant part:

(a)    During the Non-Competition Period, the Participant agrees to not, directly or indirectly, whether as owner, partner, investor, consultant, agent, employee, co-venturer or otherwise, compete with the Partnership or any member of the Partnership Group in any geographic area in which the Partnership or any member of the Partnership Group does business or, with respect to the portion of the Non-Competition Period that follows the termination of the Participant's employment, at the time of such termination (the "Restricted Area"). Specifically, but without limiting the foregoing, the Participant agrees not to work or provide services, in any capacity, anywhere in the Restricted Area, whether as an employee, independent contractor or otherwise, whether with or without compensation, to any Person that is engaged, in whole or

6

#214808621_v8

> in part, in any business that is competitive with the business of the Partnership Group, as conducted or in active planning during the Participant's employment with the Partnership Group or, with respect to the portion of the Non-Competition Period that follows the termination of the Participant's employment, at the time the Participant's employment terminates; . . ..

(Exhibit 1 Ex. A § 4(a).)

24.     The Agreement also contained a separate non-solicitation provision prohibiting Wilson from directly or indirectly hiring or engaging or soliciting for hiring or engaging any employee or independent contractor who worked for or with the Partnership or any member of the Partnership Group (including Qualus) for a period of twenty-four (24) months following the earlier of (i) the date Wilson ceased to be a partner or (ii) the date of the end of his employment.  Paragraph 4(c) of Exhibit A to the Agreement states:

> (c)     During the Non-Solicitation Period, the Participant agrees to not, and to not assist any other Person to, directly or indirectly, (i) hire or engage, or solicit for hiring or engagement, any employee of the Partnership or any member of the Partnership Group or seek to persuade any such employee to discontinue employment or (ii) solicit or encourage any independent contractor providing services to the Partnership or any member of the Partnership Group to terminate or diminish such independent contractor's relationship with any of them. For purposes of this Exhibit A, an "employee" or an "independent contractor" of the Partnership Group is any Person who was such at any time within the twelve (12)-month period immediately preceding the activity restricted by this Section 4(c). . . ..

(Exhibit 1 Ex. A § 4(c).)

25.     Section 7 of Exhibit A to the Agreement specifically authorizes Qualus to seek injunctive relief against Wilson and to obtain its expenses incurred.  Section 7 of the Agreement states:

> 7.     <u>Enforcement of Covenants</u>.  . . . The Participant agrees that the restraints herein are necessary for the reasonable and proper protection of the Partnership Group, and are reasonable in respect to

7

subject matter, length of time and geographic area. The Participant further agrees that, were the Participant to breach any of the covenants contained herein, the damage to the Partnership Group would be irreparable. The Participant therefore agrees that the Partnership, in addition to any other remedies available to them, will be entitled to preliminary and permanent injunctive relief against any breach or threatened breach by the Participant of any such covenants, without having to post bond, together with an award of their reasonable attorneys' fees incurred with enforcing their rights hereunder. So that the Partnership may enjoy the full benefit of the covenants contained in Section 4 above, the Participant agrees that the Non-Competition Period and Non-Solicitation Period will be tolled, and will not run, during the period of any breach by the Participant of such covenants. In the event that any provision of this Exhibit A is determined by any court of competent jurisdiction to be unenforceable by reason of its being extended over too great a time, too large a geographic area or too great a range of activities, that provision will be deemed to be modified to permit its enforcement to the maximum extent permitted by law. The Participant agrees that each member of the Partnership Group will have the right to enforce the Participant's obligations to such member of the Partnership Group under this Exhibit A. . . ..

(Exhibit 1 Ex. A § 7.)

26.     The Agreement is governed by Delaware law.

**C.     Wilson's resignation from Qualus and employment at RESA**

27.     On July 18, 2022, following a Board Meeting, Wilson gave notice of his resignation effective July 30, 2022.  Wilson had given no prior indication that he intended to resign from Qualus, and at the time stated that he was unsure of his future employment plans.  Upon information and belief, Wilson's claim to be uncertain about his future plans was false or misleading because he had already formed the intention to work for RESA.

28.     Prior to giving notice of his resignation, Wilson told employees that Qualus intended to shut down the Qualus Solutions entity and that they should look for jobs elsewhere. On information and belief, Wilson knew that such representations were false and made them so that employees would leave Qualus and possibly work for RESA.

8

#214808621_v8

29.     Soon after receiving his resignation notice, Qualus learned that Wilson was planning to work for RESA, a direct competitor in the power systems engineering business with locations in all of the same states that Qualus operates.

30.     At the time, Wilson assured Qualus that his position at RESA would not be competitive with his duties at Qualus.

31.      In September 2022, Qualus sent Wilson a letter reminding him of his contractual obligations and the consequences of his actions if he violated those obligations, and asking him to confirm that he had complied with, and intended to continue complying with, the Agreement.

32.     Wilson, through counsel, acknowledged that he was employed by RESA as Vice President of Planning but denied he had violated the Agreement, and stated affirmatively that "[a]ny property and information of Qualus that was in his possession or under his control has already been returned to Qualus and, in the event he discovers any other property unintentionally in his possession, such property would be promptly returned to Qualus."

33.     This statement was misleading, if not entirely untrue, since Wilson did not "return" or otherwise disclose to Qualus that he had taken the documents he sent to himself on the eve of his resignation.  In making this statement, Wilson intended that Qualus would rely on his representation and, among other things, not investigate further or take legal action against him. Qualus did in fact rely on Wilson's statement that he did not have any Qualus information and would promptly return any Qualus information he later discovered.

**D.     Wilson's continued contact with RESA employees**

34.     In February 2023, Wilson called a manager of Qualus Solutions, LLC's business and attempted to seek confidential information about Qualus's business condition.  Wilson asked

how the company was doing, whether or not the manager was changing titles or being moved into a new company, and sought information regarding the overall health and status of the company.

35.     On information and belief, Wilson has solicited at least one employee of Qualus, Dan Eckman, that was a direct report of Wilson who has left Qualus and now works for RESA.

36.     On information and belief, at least one other employee that worked for and with Wilson at Qualus left their employment at Qualus following Wilson's departure and has joined RESA.

37.     On information and belief, Wilson has continued to have contact with current employees that he worked with and managed at Qualus.

**E.     Wilson's misappropriation of trade secrets**

38.     In April 2023, after learning of Wilson's conduct described in the preceding paragraphs, Qualus performed a search of Wilson's emails.

39.     Qualus learned that on Friday July 15, 2022, three days before submitting his notice of resignation on Monday July 18, 2022, Wilson used his Qualus email to forward calendar invitations containing at least four files to his personal email address.

40.     Wilson's use of his Qualus email address to send information to his personal email address was not in furtherance of any business purpose on behalf of Qualus, and therefore was unauthorized and violated Qualus's email use policies.

41.     The files that Wilson sent to himself contained highly confidential and trade secret information that was developed by him and others for and at the expense of Qualus, were accessible only to Qualus employees using their unique user name and password, and were prohibited for disclosure to individuals or entities outside of Qualus.

42.     One document that Wilson sent to himself was a "Generation Expansion Plan" that set forth Qualus's strategies to assist current clients, identify potential clients, engage in service agreements, and close opportunities to meet Qualus's revenue goals.  The document described services and solutions offered by Qualus to new and existing clients, identified and prioritized specific prospective clients that Qualus was targeting, and stated forecasted revenues and goals.

43.     Another document titled "CE Power Rep thoughts" presented a market-by-market strategy for business development representatives and proposing strategies with respect to a specific nationwide distributor.

44.     Wilson also sent himself a sample "Manufacturer's Representative Agreement" that described the terms and conditions of employment for Qualus's sales representatives, including but not limited to commissions and compensation and other rules and requirements for sales representatives.

45.     Wilson sent himself a spreadsheet titled "CIGG Accounts" that contained a comprehensive list of actual and targeted clients developed by Qualus, along with the location and responsible representative for each account.  The list identifies over 15,000 clients and targets, and further identifies which of more than 50 Qualus employees is responsible for the client or target. For example, the accounts list identifies over 2,000 clients and targets assigned to Wilson himself, and over 45 accounts assigned to Mr. Eckman.

46.     The documents that Wilson sent himself are highly confidential and interrelated and could be used separately and collectively by a competitor such as RESA to develop a strategy and playbook in order to directly and unfairly compete with Qualus.  For example, the "Generation Expansion Plan" discusses a matrix sales program "assign[ing] a sales team member to lead the effort in acquiring projects" for existing or potential client, which is reflected in the "CIGG

11

Accounts" spreadsheet. Similarly, the "Generation Expansion Plan" refers to third-party channels that are discussed in the "CE Power Rep thoughts" document, as well as "independent rep agreements" such as the "Manufacturer's Representative Agreement."

47.     Wilson failed to return the documents upon the termination of his employment at Qualus, and later affirmatively denied that he was in possession of such documents.

48.     Wilson's actions have caused, and if not enjoined will continue to cause, irreparable harm to Qualus in addition to monetary damages.

49.     Wilson's actions have caused Qualus to incur significant expense in retaining experts to conduct a forensic examination of his laptop and emails to determine what, if any, additional information that Wilson misappropriated prior to his departure. Based on his actions on July 15, 2022, Wilson may have taken additional documents, files, or other information by email, file transfer, or by downloading them onto a storage drive or other electronic device.

## Causes of Action

### Count One:  Breach of Contract

50.     Qualus incorporates the averments set forth in Paragraphs 1 through 49 as if set forth herein.

51.     The Agreement is a valid, enforceable contract supported by good and valuable adequate consideration.

52.     The restrictions contained in the Agreement are reasonably limited to protect Qualus's legitimate business interests and are enforceable under Delaware law, which governs the Agreement.

53.     Wilson breached the confidentiality provision in Section 2 of the Agreement by misappropriating Qualus's trade secrets and confidential information when he used his Qualus

email address to send confidential information and trade secrets to his personal email address, and by failing to return any and all documents, files, and other property of Qualus upon the termination of his employment.

54.     Wilson has breached the non-competition provision in Section 4(a) of the Agreement through his employment at RESA, a direct competitor of Qualus, within the restricted period.

55.     Wilson has breached the non-solicitation provisions in Section 4(b) of the Agreement by soliciting Qualus's employees to leave Qualus and to become employed by RESA.

56.     Wilson's knowing, willful, and intentional breaches of the Agreement have caused and will continue to cause irreparable harm and other monetary damages to Qualus, and further entitle Qualus to recover its reasonable attorneys' fees and costs pursuant to the Agreement.

**Count Two:  Defend Trade Secrets Act (18 U.S.C. § 1831, *et. seq.*)**

57.     Qualus incorporates the averments set forth in Paragraphs 1 through 49 as if set forth herein.

58.     The documents and files that Wilson sent himself on July 15, 2022, and any other documents that Wilson may have taken without Qualus's knowledge, contained Qualus's business strategies, agreements, and client lists that constitute trade secrets because they derive independent economic value from not generally being known or readily ascertainable by proper means, and are the subject of Qualus's reasonable measures to maintain their secrecy.

59.     Wilson misappropriated Qualus's trade secrets by acquiring them through improper means by using his Qualus email address to send them to a personal email address for his use individually and on behalf of RESA, by failing to return them upon the termination of his employment, and then misleading Qualus by stating affirmatively that he did not have any such

information.

60.     Qualus has and will suffer substantial and irreparable harm not fully compensable through monetary damages by Wilson's willful, malicious, and unauthorized misappropriation and use of Qualus's trade secrets and confidential information.

61.     Qualus is entitled to injunctive relief and recovery of damages permitted by the Defend Trade Secrets Act, including but not limited to the actual loss caused by Wilson's misappropriation, unjust enrichment caused by the misappropriation, compensatory and exemplary damages, and attorneys' fees.

**Count Three:  Ohio Uniform Trade Secrets Act (O.R.C. § 1333.61, *et. seq.*)**

62.     Qualus incorporates the averments set forth in Paragraphs 1 through 49 as if set forth herein.

63.     Qualus's business strategies, agreements, and client lists constitute trade secrets because they derive independent economic value from not generally being known or readily ascertainable by proper means, and are the subject of Qualus's reasonable measures to maintain their secrecy.

64.     Wilson misappropriated Qualus's trade secrets by acquiring them through improper means by using his Qualus email address to send them to a personal email address for his use individually and on behalf of RESA, by failing to return them upon the termination of his employment, and then misleading Qualus by stating affirmatively that he did not have any such information.

65.     Qualus has and will suffer monetary damages and other substantial and irreparable harm not fully compensable through monetary damages by Wilson's willful, malicious, and unauthorized misappropriation and use of Qualus's trade secrets and confidential information.

14

66.     Qualus is entitled to injunctive relief and recovery of damages permitted by the Ohio Uniform Trade Secrets Act, including but not limited to the actual loss caused by Wilson's misappropriation, punitive damages, and attorneys' fees.

## Count Four:  Breach of Fiduciary Duty

67.     Qualus incorporates the averments set forth in Paragraphs 1 through 49 as if set forth herein.

68.     As Vice President, Business Development of Qualus Services, Wilson held a fiduciary relationship with Qualus in which it placed special confidence and trust in the integrity and fidelity of Wilson towards Qualus.

69.     Wilson failed to observe his fiduciary duty to Qualus by sowing doubt and discontent among Qualus' workforce, including by falsely informing employees that Qualus intended to shut down the Qualus Solutions and that they should find new employment.

70.     On information and belief, Wilson's actions caused monetary and other damages to Qualus by interfering with its relationships with its employees, and were willful and warrant the imposition of punitive damages.

## Count Five:  Injunctive Relief

71.     Qualus incorporates the averments set forth in Paragraphs 1 through 49 as if set forth herein.

72.     Upon information and belief, Qualus can and will establish a substantial possibility that it will prevail on the merits that the restrictive covenants contained in the Agreement are valid and enforceable agreements and that Wilson has breached them as an employee of RESA, and that Wilson has misappropriated Qualus's confidential information and trade secrets in violation of the Defend Trade Secrets Act and the Ohio Uniform Trade Secrets Act.

73.     When reminded of his contractual obligations, Wilson unequivocally and falsely denied he was in possession of any documents or other information of Qualus, or that he had otherwise violated the Agreement.  Qualus relied on Wilson's representations but subsequently learned that they were false.

74.     Unless Wilson is preliminarily enjoined from continuing to violate the terms of the Agreement and from using and/or disclosing Qualus's trade secrets, including but not limited to the documents that he sent to himself on July 15, 2022 and any other documents or information he took in preparation for his departure Qualus, Qualus will be irreparably harmed through the loss of highly confidential and trade secret information which can be used by a direct competitor to unfairly compete with Qualus.

75.     A preliminary injunction would not be inequitable and would require Wilson only to abide by his contractual obligations and refrain from using or disclosing Qualus's trade secrets, and would not unduly harm other parties or disserve the public.

**Count Six:  Declaratory Judgment/Specific Performance**

76.     Qualus incorporates the averments set forth in Paragraphs 1 through 49 as if set forth herein.

77.     Qualus seeks a declaratory judgment that the Agreement is a valid, enforceable contract supported by good and valuable adequate consideration, and that Wilson's employment at RESA and his solicitation of Qualus's employees in the course of same constitute a breach of the Agreement.

78.     Qualus seeks a declaratory judgment that the confidential documents that Wilson sent from his Qualus email address to a personal email address constitute trade secrets and property of Qualus and were misappropriated, and that Wilson is prohibited from using or disclosing such

16

information for any purpose, including but not limited to as an employee of RESA.

79.     Qualus is entitled to entry of judgment against Wilson for specific performance of his obligations under the Agreement for the entire restricted period and prohibiting Wilson from using or disclosing the confidential information and trade secrets that he misappropriated from Qualus while he was an employee of Qualus, and returning or destroying same.

80.     The restricted period should be tolled for the time that Wilson has been an employee of RESA and otherwise in breach of the Agreement, including the period during which Qualus relied upon Wilson's unequivocally false denial that he had breached the Agreement.

### **Jury Demand**

Qualus demands a trial by jury pursuant to Fed. R. Civ. P. 38.

### **Prayer for Relief**

WHEREFORE, Qualus respectfully prays:

1.     That the Court set a hearing and enter a Preliminary Injunction immediately and throughout the course of this action enjoining or ordering Wilson from the following:

> (1)     Enjoining Wilson, and those in active concert or participation with him, from possessing, disclosing, or accessing any documents or files of Qualus, including but not limited to the documents that he sent from his Qualus email address to his personal email address on or about July 15, 2022, or any of the information contained in same;

> (2)     Using for any purpose any documents or files of Qualus, including but not limited to the documents that he sent from his Qualus email address to his personal email address on or about July 15, 2022, or any of the information contained in same, including but not limited to directly or indirectly contacting any of the clients specifically identified in the Generation Expansion Plan and account lists, working with any distributor networks identified in the documents, or implementing on behalf of RESA any of the business strategies identified in the documents; and

> (3)     Ordering Wilson to return any and all documents, files, information, or other property of Qualus that he has in his possession or to which he has

#214808621_v8

access, and to submit any devices, drives, or accounts he used to access and/or store Qualus's information or documents for forensic examination.

2.      That the Court find that Wilson is in breach of the Agreement and enter judgment against Wilson ordering specific performance of his obligations pursuant to the Agreement;

3.      That the Court award Qualus its actual damages to be proven at trial in addition to its reasonable attorneys' fees and punitive damages, and all other remedies permitted by Ohio law and the Defend Trade Secrets Act and Ohio Uniform Trade Secrets Act;

4.      That the Court grant any other necessary and appropriate preliminary and permanent injunctive relief against Wilson;

5.      That the Court grant Qualus's Motion for Leave of Court to Conduct Expedited Discovery, filed contemporaneously herewith;

6.      That costs be taxed to Wilson; and

7.      That the Court fashion such other or additional relief as appropriate.


_____
/s/ John Park
John J. Park
Holland & Knight, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
(615) 244-6380
john.park@hklaw.com

Peter N. Hall (motion for admission pro hac vice forthcoming)
Holland & Knight, LLP
1180 West Peachtree Street, NW, Suite 1800
Atlanta, Georgia 30309
(404) 817.8412
peter.hall@hklaw.com

Attorneys for Plaintiffs

18

## **VERIFICATION**

I, Susan Gerace, have read the foregoing Verified Complaint, am familiar with the matters alleged therein, and am authorized to verify on behalf of Plaintiffs Qualus Corporation and Qualus Services, LLC that the facts stated and the allegations contained therein are true to the best of my knowledge and belief.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7 th day of June 2023.

*Susan Gerace*
Susan Gerace (Jun 7, 2023 11:12 EDT)