## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**QUALUS CORP.,** *et al.,*

        **Plaintiffs,**

                                    **Case No. 1:23-cv-352**

      **v.**                         **JUDGE DOUGLAS R. COLE**

**BRIAN WILSON**

        **Defendant.**

### OPINION AND ORDER

      Qualus Corporation and Qualus Services, LLC (collectively Qualus) sued their former employee, Brian Wilson. Qualus claims that Wilson's new employment at RESA Power LLC violates a non-competition agreement he signed while at Qualus. Before RESA was a party to the action, Wilson and Qualus stipulated to the entry of a preliminary injunction (SPI) governing Wilson's conduct while this suit is pending. (Doc. 11). RESA then sought to intervene claiming that the SPI impacts its rights as Wilson's current employer. (Doc. 13). The Court allowed RESA to do so. (Op., Doc. 18). Now, RESA moves to vacate or modify the SPI. (Motion, Doc. 19). For the reasons discussed below, the Court **GRANTS IN PART** RESA's Motion (Doc. 19) and will modify the SPI to address RESA's concerns.

### BACKGROUND

      Qualus sued Wilson alleging he stole its trade secrets and is violating non-competition and non-solicitation covenants that bind him. (Compl., Doc. 2, #2). According to Qualus, Wilson served as Vice President of Business Development at

Qualus Services beginning on June 12, 2021. (*Id.* at #5). In that role, Plaintiffs alleged that he worked on business strategy development and gained access to confidential business information, including the names of 15,000 clients and targets. (*Id.* at #5, #12). In connection with his employment, Wilson signed an Agreement containing confidentiality, non-competition, and non-solicitation provisions. (*Id.* at #6–8; *see also* Doc. 2-1).

The parties agree that Wilson gave notice of his intention to resign from Qualus on July 18, 2022. (Doc. 2, #9; Answer, Doc. 12, #105). They disagree about whether that resignation was to be effective on July 30 or August 19. (Doc. 2, #9; Doc. 12, #105). Either way, shortly after Wilson left Qualus, he began working as Vice President of Planning at RESA. (Doc. 2, #10; Doc. 12, #101). Qualus alleged that, when it contacted him in September 2022, Wilson assured Qualus that he was not violating the Agreement and had returned all trade secret information. (Doc. 2, #10). But according to Qualus, that was not true. Rather, Wilson had allegedly used his Qualus email to forward "highly sensitive" information to his personal email three days before he resigned. (*Id.* at #10–11). They also alleged that Wilson has solicited at least one former employee, Dan Eckman, to work for Qualus in violation of Wilson's non-solicitation agreement. (*Id.* at #11).

Qualus sued Wilson on June 8, 2023. (Doc. 2). That same day, it moved for a preliminary injunction (Doc. 3) and sought expedited discovery (Doc. 4). On June 20, the Court held a telephone conference to discuss those motions. During that call, the parties requested a few weeks to explore an agreement regarding a preliminary

2

injunction, which the Court allowed. (6/20/23 Min. Entry). On July 6, 2023, the

parties filed the proposed stipulation and agreed preliminary injunction. (Doc. 10).

The Court entered that injunction (the SPI) on July 11. (Doc. 11). It then denied the

Motion for Expedited Discovery as moot. (7/11/23 Not. Order).

> The portion of the SPI relevant to this Opinion reads:
>
> Wilson, and those in active concert or participation with him, is hereby
> specifically enjoined from:
>
>> (a) Disclosing or knowingly and intentionally accessing any
>> documents or files of Qualus, including but not limited to the
>> Qualus Documents, or any of the information contained in same;
>>
>> (b) Using for any purpose any documents or files of Qualus,
>> including but not limited to the Qualus Documents, or any of the
>> information contained in same;
>>
>> (c) Directly or indirectly contacting any of the clients specifically
>> identified in the Generation Expansion Plan and account lists,
>> working with any distributor networks identified in the
>> documents, or implementing on behalf of RESA any of the
>> business strategies identified in the documents; and
>>
>> (c)[1] Making any statement or taking any action that is contrary
>> to Wilson's stipulations herein.
>
> Nothing contained in this Stipulation is intended to, nor shall, extend
> the time periods or scope of the restrictive covenants contained in the
> Agreement entered into between Wilson and Qualus, although Qualus
> reserves the right to argue that the restrictive covenants should be tolled
> and/or extended on any applicable grounds at law or equity.

(Doc. 11, #98–99).

RESA moved to intervene on August 1, (Doc. 13), which the Court granted on

September 6 (Doc. 18). That same day, RESA moved to vacate or modify the SPI (Doc.

19). In that motion, RESA argued that the Court should modify or vacate the SPI

---

[1] The SPI the parties presented to the Court had two subsections labeled (c). The Court failed
to detect or to correct that typographical error before entering the Order.

because it unreasonably restricts RESA's activities as Wilson's current employer and effectively results in an impermissible extension of the Agreement's non-compete provisions. (*Id.* at #193–97). And if the Court is inclined to modify rather than to vacate, RESA requests four specific changes—one deletion and three additions. Specifically, RESA seeks to delete the reference to Qualus's express reservation of its right to seek equitable tolling. (*Id.* at #202). And it seeks to add language clarifying that (1) the preliminary injunction does not require compliance with restrictive covenants after they expire on their terms, (2) RESA is not prohibited from competing with Qualus while the covenants remain in force as long as Wilson is not involved, and (3) RESA may use information that might otherwise constitute a trade secret as long as it obtains the information in a lawful manner and does not learn it from Wilson. (*Id.* at #202–03).

Qualus responded on September 13 arguing that there are no grounds to vacate the SPI because (1) RESA had no right to notice as a non-party, (2) the SPI does not unduly restrict RESA, and (3) the SPI does not effectively extend the non-compete covenant. (Opp'n, Doc. 20, #210–13). It also argues that modifying the injunction would be "unnecessary and contrary to Fed. R. Civ. Pro. 65(d)," (*id.* at #213), addresses each of RESA's proposed revisions, and offers one counterproposal (*id.* at #214–16). RESA replied on September 15, in which it agreed to Qualus's counterproposal regarding its second proposed addition and edited its third proposed addition to respond to Qualus's concerns. (Doc. 22, #244–45). The matter is now ripe for review.

4

## LAW AND ANALYSIS

Now that RESA has intervened, the SPI no longer reflects the unanimous agreement of the parties. So the Court begins by discussing the propriety of an injunction, then considers RESA's arguments for vacating or modifying the existing injunction.

### A.     Propriety Of An Injunction

The Court must consider four factors when determining whether a preliminary injunction is proper: "(1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether … the injunction would cause substantial harm to others; and (4) whether the public interest would be served by [its] issu[ance]." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). The Court considered these factors when entering the SPI. But given all the parties then-joined to the suit had agreed to the injunction, the Court's analysis was somewhat cursory. Even when taking a closer look at the factors in light of RESA's briefing, though, the Court once again determines that a preliminary injunction is appropriate.

Begin with Qualus's likelihood of success on the merits. To prove a misappropriation of trade secrets claim, a plaintiff must show "(1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret." *Heartland Home Fin., Inc. v. Allied Home Mortg. Cap. Corp.*, 258 F. App'x 860, 861 (6th Cir. 2008) (citation

omitted).[2] Wilson and Qualus stipulated that Wilson still possessed confidential Qualus files in a mobile phone archive, even after his employment with Qualus ended. (Doc. 11, #95–96). They also stipulated that Wilson had the files because they were automatically forwarded from his Qualus email address to his personal email address. (*Id.* at #95). That is enough to show a reasonable likelihood of success on the merits for at least the first two prongs of the trade secrets claim. Namely, the documents contained information that the parties agreed was confidential and proprietary under the terms of the Agreement, (Doc. 2, #11; Doc. 2-1, #21–22, 24; Doc. 11, #95–96), and Wilson received the documents during his previous employment with Qualus, (Doc. 2-1, #21–22).[3]

As for the third prong, Wilson has not stipulated that he is using the trade secrets. Indeed, he claims he was not even aware that he had the information. (Doc. 11, #95–96). But even ongoing retention of trade secrets after an employment relationship ends can support injunctive relief when there is a threat of unauthorized use of such information. *Mech. Constr. Managers, LLC v. Paschka*, No. 3:21-cv-302, 2022 WL 1591605, at *10 (S.D. Ohio May 19, 2022) ("Although there is presently no evidence that Defendant [] has used any of these trade secrets, there is an 'actual

---

[2] "The requirements for establishing misappropriation of trade secrets are substantially the same under the Defend Trade Secrets Act ('DTSA') and the Ohio Uniform Trade Secrets Act ('OUTSA')." *Collar Jobs, LLC v. Stocum*, No. 1:22-cv-1892, 2022 WL 17340456, at *10 (N.D. Ohio Nov. 30, 2022) (citation omitted). Therefore, the same legal standard applies to Plaintiffs' likelihood of success on their claims under both statutes. (Doc. 2, #14–16).

[3] The parties of course remain free to argue as this case progresses that the information at issue does not constitute a trade secret or otherwise qualify for protection. For purposes of preliminary injunctive relief, the Court merely determines that Qualus has shown that it has a reasonable likelihood of establishing that down the road.

threat of harm.'" (citation omitted)). In any event, those same facts also show a likelihood of success on the merits of the breach of contract claim because the Employment Agreement called for Wilson to surrender or destroy all Qualus documents in his possession when he left Qualus, (Doc. 3-1, #38), which he stipulates he did not do (Doc. 11, #95–96).

Next, consider the likelihood of harm to Plaintiffs absent injunctive relief. Qualus contended that "Wilson could use these documents to block Qualus's business strategies and usurp its best customers." (Doc. 3-1, #47). The information in the documents allegedly goes to the core of Qualus's business, so an injunction is a fitting means to prevent substantial harm to Qualus while this litigation is pending.

Third, consider the likelihood of harm to others prong. Admittedly, the injunction necessarily must be drafted with its effects on RESA in mind, which the Court does as is discussed below. But an injunction against Wilson's use of Qualus's confidential information, information to which RESA is not entitled, does not inherently harm RESA. So this factor does not count against granting an injunction— at least as to the use of such information.

The public interest—the fourth and final factor—also does not count against granting an injunction. Because this case is about trade secrets and employment relationships, an injunction is unlikely to meaningfully affect anyone other than Qualus, Wilson, or RESA. And protecting trade secrets and preventing misappropriation advances the public interests in promoting innovation and avoiding unfair competition through parties' adherence to their contractual obligations. *PUI*

*Audio, Inc. v. Van Den Broek*, No. 3:21-cv-284, 2021 WL 5164935, at *10 (S.D. Ohio Nov. 4, 2021).

In sum, then, a preliminary injunction is warranted here because the first two factors support an injunction, and the balancing of the equities does not counsel against an injunction.

## B. Arguments To Vacate Or Modify The Existing Injunction

Having determined that injunctive relief is still warranted after RESA's intervention, the Court considers RESA's arguments regarding the scope of the existing injunction. RESA advances four arguments why the Court should vacate or modify the SPI: lack of notice, impermissible vagueness, failure to consider the possibility of a bond, and that the SPI functionally extends Wilson's noncompete covenant beyond the time when it would have otherwise expired.

After considering each argument in turn, the Court concludes that it need not vacate the existing injunction. The Court will, however, modify it. The modified injunction is provided in its entirety at the end of this Opinion.

### 1. Notice

Begin with notice. "The court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). The corollary of this is that where a party has not received adequate notice and an opportunity to be heard, the court must vacate the injunction. *Amelkin v. McClure*, 74 F.3d 1240, 1996 WL 8112, at *6 (6th Cir. 1996) (table). RESA argues that "[b]ecause RESA Power was not provided with the notice Rule 65(a) requires, this Court *must* vacate the SPI as to RESA Power."

8

(Doc. 19, #197) (emphasis added). Qualus contests this by arguing that "RESA Power was not entitled to a say in the SPI or even a seat at the bargaining table because it is not a party to the SPI." (Doc. 20, #210 (cleaned up)).

Qualus has the better argument about notice. The phrase "adverse party" in Rule 65 refers to the adverse party *in the action*, not everyone who may be adversely impacted by the requested injunction. *Cf. Smith v. Bayer Corp.*, 564 U.S. 299, 312–14, 313 n.10 (2011) (noting that "party" is a term of art and tying it to the formal processes by which an individual joins a cause of action); *cf. also Habelt v. iRhythm Techs., Inc.*, No. 22-15660, 2023 WL 6614359, at *2–*3 (9th Cir. Oct. 11, 2023) (applying strictly the rule that a party must have intervened or directly participated in a lawsuit to be considered a party to an action with standing to appeal a district court's order even if the individual would otherwise have an interest in the outcome of the suit). Imagine cases in which a patent holder seeks injunctive relief preventing distribution of an allegedly infringing product. The patent holder need not provide notice to all potential customers of that product, even though the requested injunctive relief may adversely impact them. Rather, notice to the adverse party in the action suffices.

Here, at the time the Court entered the injunction, RESA was not a party to this action—adverse or otherwise. Thus, the lack of notice to RESA is not a basis for vacating the injunction.

RESA resists this conclusion by pointing to cases such as *In re NAACP, Special Contribution Fund*, 849 F.2d 1473, 1988 WL 61504 (6th Cir. 1988) (per curiam)

9

(table). There, non-party NAACP appealed two orders, one of which "enjoin[ed] it from prosecuting a lawsuit against [the] appellee." *Id.* at *1. True, the Sixth Circuit vacated both orders, but not for lack of notice. *Id.* Rather, lack of personal jurisdiction was the problem. *Id.* In other words, that case was about whether the injunction was *enforceable* against the NAACP as a matter of the court's authority to exercise such equitable power, not whether the parties had met Rule 65's notice requirement. To be sure, if Qualus had sought to *enforce* the SPI against RESA, *In re NAACP* may have more traction. But Qualus never sought to do so, and RESA now has an opportunity to be heard regarding its concerns about the SPI's scope, so either way, the case offers little guidance here.

The other cases that RESA cites are similarly unhelpful. In *Amelkin*, the Sixth Circuit determined that the real party in interest to the preliminary injunction (who was joined to the lawsuit at the time the time the injunction was entered) had not had an opportunity to be heard before its issuance. 1996 WL 8112, at *2. Here, the preliminary injunction was directed at Wilson. It reaches RESA, if at all, only through the "in active concert or participation with" language. (Doc. 11, #98). While the Court found that this language gave RESA a sufficient interest to support intervention (and thus become a party to this action), the language does not suffice to make RESA the real party in interest for purposes of this preliminary injunction at the time the Court issued it.[4] (Doc. 8, #180–81). And again, RESA now has an opportunity to be heard, which should address its concerns going forward.

---

[4] After all, all this language does is effectively implement the age-old legal maxim that "what cannot be done directly cannot be done indirectly." *Students for Fair Admissions, Inc. v.*

Finally, *Total Quality Logistics, LLC v. Traffic Tech, Inc.* involved an appeal by the two *named defendants* of a Temporary Restraining Order (TRO) that was converted into a preliminary injunction without affording them the opportunity to be heard. Nos. 22-3148/3377, 2023 WL 1777387, at *2 (6th Cir. Feb. 6, 2023). Again, RESA was not a party at the time this preliminary injunction issued. The decision in *Hunter v. Hamilton County Board of Elections* likewise involved the actual *defendant's* right to be heard. 635 F.3d 219, 246 (6th Cir. 2011). Nothing in those cases supports the proposition that the Court must vacate a preliminary injunction because an intervenor who was not a party when the injunction was issued and is not directly mentioned in or bound by the injunction has a right to notice under Rule 65. Accordingly, the Court concludes it need not vacate the SPI for lack of notice under Rule 65.

Of course, when the Court considers modifying an injunction, it must also give the parties notice and an opportunity to be heard. *Hunter*, 635 F.3d at 246–47. And now RESA is a party, so it has a right to be heard. But the Court has afforded RESA that opportunity. It allowed the parties to brief the issue of the proper scope of any modification. Further, no party has requested an evidentiary hearing and no contested issues of fact need be resolved for the Court to rule on the scope of the modified preliminary injunction. *See id.* at 246 ("[A]lthough a hearing is not required when the issues are primarily questions of law, Rule 65(a)(1) does require a hearing

---

*President & Fellows of Harvard Coll.*, 600 U.S. 181, 230 (2023) (quoting *Cummings v. Missouri*, 71 U.S. (4 Wall.) 277, 325 (1867)) (cleaned up).

when there are disputed factual issues material to the preliminary injunction." (cleaned up)).

### 2. Vagueness

Next, the Court considers vagueness. Rule 65(d)(1) requires that every injunction "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not be referring to the complaint or other document—the act or acts restrained or required." RESA says the SPI is too vague because it prohibits using information from "unspecified" documents instead of listing the clients, "Plan," "account lists," "distributor networks," or "business strategies" covered by the SPI. (Doc. 19, #194–95).

The Court disagrees. The language in the SPI covers information contained in certain Qualus documents, not an unbounded universe of proprietary information. It also enjoins RESA only so far as it is acting in active concert or participation with Wilson. And Wilson, who held a high-level position at Qualus, presumably knows what the "Generation Expansion Plan" entails and can ensure compliance with the injunction. (Doc. 11, #98).

RESA again points to *Total Quality Logistics* to support its position. There, the court vacated an injunction referencing a TRO that was "impermissibly vague and overbroad," in part because it did not define the "trade secrets" or "confidential information" that it enjoined the defendant from disclosing. 2023 WL 1777387, at *5. *Total Quality Logistics* is distinguishable from this case for two reasons. First, the court in that case extended the TRO by several months without additional legal

analysis because the parties had treated the TRO as "tantamount to" a preliminary injunction, which was error. *Id.* at \*4 (cleaned up). Second, the TRO merely stated that the defendant "is enjoined from disclosing any trade secrets or confidential information" and required him to comply with all terms of his covenant with the plaintiff. *Id.* at \*5. That prohibition offers far less detail than the instant SPI, which refers to specific documents and types of proprietary information to which Wilson had access through his mobile phone archive after he departed Qualus. The injunction at issue in *Union Home Mortgage Corporation v. Cromer*, the other case RESA cites, was similarly less directive than the instant injunction. 31 F.4th 356, 361 (6th Cir. 2022). Neither case supports the argument that the Court must vacate the SPI.

### 3. Failure to consider a bond

Third, RESA attacks the Court's purported failure to consider requiring a bond. As RESA puts it, "[t]he SPI also fails to comply with Rule 65 because the appropriateness of a bond was not considered." (Doc. 19, #197 n.5). True, under Rule 65(c), "[t]he court may issue a preliminary injunction … only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." But "[w]hile ... the language of Rule 65(c) appears to be mandatory … the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security." *Moltan Co. v. Eagle-Picher Indus., Inc.,* 55 F.3d 1171, 1176 (6th Cir.1995) (citation omitted). And even more to the point, a party can waive its right to seek a bond for a preliminary injunction. *E.g.*, *Ray Ins. Agency, Inc. v. Wolfe*, No. 2:19-cv-

13

2766, 2019 WL 13198202, at *3 (S.D. Ohio July 3, 2019); *Relo Franchise Servs., Inc. v. Gilman*, No. 1:18-cv-578, 2019 WL 324215, at *5 (S.D. Ohio Jan. 25, 2019); *Marlite, Inc. v. Canas*, No. 5:09-cv-1401, 2009 WL 7272686, at *12 (N.D. Ohio July 22, 2009).

How does that play out here? RESA is correct that the Order entering the SPI does not discuss whether a bond is necessary. But the twist is that the then-parties agreed that an injunction—an injunction that did not include a bond—was appropriate. That is akin to the parties jointly waiving their right to such a bond. In fairness, RESA was not part of those negotiations. But, as discussed above, RESA was not then an adverse party for purposes of Rule 65, nor did the injunction directly bind its behavior. Therefore, the Court need not vacate the injunction for failure to consider the propriety of a bond.

### 4. Extension of the noncompete covenant

Finally, the Court considers RESA's argument that the SPI functionally extends and expands the noncompete covenant. RESA makes two arguments on this front. First, it says that the SPI extends the time and scope of the covenant by sweeping in RESA. (Doc. 19, #195). Because the SPI covers RESA only to the extent that it is acting in active concert or participation with Wilson, as discussed above, this argument is unavailing. That said, adding language that clarifies that RESA is not independently bound (i.e., apart from Wilson) will not harm Qualus, but instead will only make the SPI's original meaning more explicit.

Second, RESA argues that because the SPI came into effect on the eve of when aspects of Wilson's restrictive covenants, and the noncompete covenant in particular,

14

would have otherwise expired, it functionally extended that covenant. (*Id.* at #195–96). Put differently, RESA contends that the SPI prevents it from moving Wilson to a role in which he could compete with Qualus because Qualus expressly reserves the right to argue that the covenants should be equitably tolled. (*Id.*). Equitably tolling the covenants would retroactively make it impermissible for Wilson to hold such a role, thereby leaving RESA in a precarious position: it is faced with exercising its right to place Wilson in the position of its choosing gambling that the covenant will not be retroactively applied or declining to exercise the right to which it is entitled at all. (*Id.*). In short, RESA contends it does not really have the option to move Wilson into a competing role. Thus it asks the Court to modify the SPI.

"District courts have authority both under common law and [Federal] Rule [of Civil Procedure] 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or [to] prevent manifest injustice." *Id.*

The Court concludes that failing to clarify that the SPI does not functionally extend the length or scope of the covenants in the ways suggested above would work a manifest injustice. Therefore, the Court will clarify the nature of the injunctive relief by adopting versions of RESA's proposed modifications. In sum, the Court is modifying the SPI to ensure that no provisions can be misunderstood as obligating

RESA or Wilson to be bound by the restrictive covenants after they expire by their natural terms. But, in making those modifications, the Court also notes that is not ruling on whether equitable tolling does or does not apply to any of the covenants in the Agreement. Rather, the Court is simply clarifying the scope of *the preliminary injunction itself*.

More specifically, the Court will add language clarifying that (1) once any restrictive covenant expires by its own terms, the preliminary injunction will not independently require Wilson or anyone else to abide by the otherwise-expired covenant; (2) the preliminary injunction does not enjoin RESA from doing or soliciting business with or from any Qualus customer or prospective customer, even while the restrictive covenants are in effect, so long as Wilson is not directly or indirectly involved in such solicitation or transactions; and (3) RESA is free to use any lawfully obtained information, even if that information may otherwise constitute a trade secret of Qualus, unless Wilson is the source of the information.

In adopting these changes, the Court notes that Qualus has agreed to the second addition, which reflects its counterproposal. (Doc. 20, #215–16; Doc. 22, #244). And it nearly agreed to the third, which RESA modified to address concerns Qualus raised. (Doc. 20, #216; Doc. 22-1, #249). True, Qualus did not agree to the first proposed addition. (Doc. 22-1, #248). But the Court will adopt it over Qualus's objections. As RESA emphasizes, this modification will not shorten the natural terms of the restrictive covenants, (Doc. 22, #243): 24 months for the non-solicitation covenant and 12 months for the non-compete covenant, (Doc. 2-1, #25). Finally,

because the new injunction is no longer based on the parties' unanimous agreement, the Court has also edited the injunction to remove any reference to such agreement. For clarity, the Court presents the entirety of the injunction, as modified and controlling from this point forward, below. Again, though, the Court stresses that the modifications do not prevent Qualus from arguing for equitable tolling in connection with any permanent injunctive relief or damages in this matter (or any other party from disputing the applicability of such tolling). Rather, the Court merely wants to clarify that *this preliminary injunction* does not prohibit any covered conduct after the stated expiration date for a given covenant in the Agreement.

## C. The New Preliminary Injunction

For the reasons discussed above, the Court **ORDERS**, **ADJUDGES**, and **DECREES** that:

1. Wilson, and those in active concert or participation with him, is hereby specifically enjoined from:

> a. Disclosing or knowingly and intentionally accessing any documents or files of Qualus, including, but not limited to, the four files containing Qualus's information (the Qualus Documents) that were automatically sent to Wilson's personal email address on July 15, 2022, or any of the information contained in the same;

    b.   Using for any purpose any documents or files of Qualus, including, but not limited to, the Qualus Documents, or any of the information contained in the same; and

    c.   Directly or indirectly contacting any of the clients specifically identified in the Generation Expansion Plan and account lists, working with any distributor networks identified in the documents, or implementing on behalf of RESA any of the business strategies identified in the documents.

Nothing contained in this Order is intended to, nor shall, extend the time periods or scope of any restrictive covenants contained in the Class B Unit Award Agreement (the Agreement) between Wilson and Plaintiffs. Once the restrictive covenants in the Agreement expire by their terms, this Order will not prevent Wilson and those acting in concert with him from competing with Plaintiffs and soliciting business from customers and prospective customers of Plaintiffs. Wilson's employers are not enjoined from doing or soliciting business with or from any customer or prospective customer of Plaintiffs, even while the restrictive covenants are in effect, so long as Wilson is not directly or indirectly involved in such solicitation or transactions. This Order does not enjoin Wilson's employers from using any lawfully obtained information, even if that information may otherwise constitute a trade secret of Qualus, unless Wilson was directly or indirectly the source of that information.

2. Wilson is further ordered to submit or to provide access to the following items for forensic examination by Page One Legal ("Page One"), an expert agreed upon by

18

Wilson and Plaintiffs: (a) the personal email account that received the Qualus Documents; (b) any other email account to which Wilson has access and which is determined by Page One to have received Qualus information sent by Wilson at any time; (c) any physical device or cloud storage account to which Wilson has access and that has been determined by Page One to have housed Qualus information at any time; and (d) any computer, cell phone, tablet, or other device which Wilson has used to access any account or device described in clauses (a) through (c) hereof. Qualus and Wilson shall put in place a mutually agreeable protocol to ensure that the forensic examination is limited to the purposes of identifying Qualus information remaining in Wilson's possession, custody, or control and metadata related to such information (including, for example, when the information has been accessed and by whom, or if it has been altered, and whether it has been moved to any other account or device) and to protect Wilson's personal or private information contained or accessible via Wilson's device(s). Wilson and Qualus shall split the costs of the forensic examination by Page One evenly, but Qualus shall have the right to seek recovery of its share of the forensic examination through the litigation, should it wish to do so.

Wilson shall otherwise immediately return any and all documents, files, information, or other property of Qualus that he has in his possession or to which he has access.

3. Through July 18, 2024,[5] Wilson shall not contact any employee of Qualus for the purposes of soliciting them to leave their employment at Qualus, to become

---

[5] The SPI the then-parties originally presented to the Court listed this date as July 18, 20*23*. (Doc. 11, #97). But the non-solicitation provision of the Agreement runs "until the earlier of

employed by RESA Power, or otherwise to disparage or to discuss the business of Qualus. Wilson also shall not contact any customer, business partner, or other entities doing business with Qualus. However, nothing contained within this Paragraph shall prohibit Wilson from having and maintaining personal or social relationships with any Qualus employee, customer, or representatives of any customer, business partner, or other entities doing business with Qualus. Nothing contained in this Paragraph is intended to, nor shall, extend the time periods or scope of the restrictive covenants contained in the Agreement between Wilson and Qualus.

Because of the limited relief ordered in this injunction, coupled with the fact that Wilson (the person primarily bound) and Qualus have agreed to this relief without request for bond, the Court further orders that no bond is necessary.

This Order shall remain in effect through the completion of this litigation, or until further Order of this Court.

## CONCLUSION

For the above reasons, the Court **GRANTS IN PART** RESA's Motion to Vacate or Modify Preliminary Injunction (Doc. 19).

---

the twenty-four (24) month anniversary of (a) the date on which the Participant [Wilson] ceases to be a Partner of the Partnership and (b) the date of the cessation of the Participant's employment with the Partnership Group." (Doc. 2-1, #25). As discussed above, the parties dispute when Wilson's resignation became effective. But the Court assumes, based on this date being July 18, 2023, in the original SPI, that the parties started the clock when Wilson gave notice of his resignation. If that is right, because Wilson gave notice of his resignation on July 18, 2022, (Doc. 2, #9; Doc. 12, #105), the non-solicitation provision should run to July 18, 20_24_, by its natural terms. In any event, as noted above, the parties remain free to dispute when the non-solicitation provision under the Agreement actually expires. The sole question here is the time period through which this preliminary injunction enforces that covenant. For the reasons stated above, the preliminary injunction will require compliance through July 18, 2024.

**SO ORDERED.**

October 18, 2023
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**